ADAMS, Justice.
These appeals arise out of the claims of seamen against their former employers (the owners and operators of ships on which they served) and various manufacturers, alleging injuries from exposure to asbestos products while aboard these ships. The facts and procedural background of this litigation are thoroughly set out in Sheffield v. Owens-Corning Fiberglass Corp., 595 So.2d 443 (Ala.1992), which involved the claims of William Shaw, Henry Sheffield, and John Young (“plaintiffs”) against 18 companies that owned or operated the ships (“shipowners”) on which the plaintiffs served and the third-party claims of the shipowners for indemnity or contribution against Owens-Corning Fiberglass Corporation (“OCF”) and John Crane, Inc., manufacturers of asbestos products to which the plaintiffs were allegedly exposed while aboard the shipowners’ vessels.
The present case involves the third-party claims of the same group of shipowners for indemnity or contribution against Owens-Illinois, Inc. (“Owens”), and Keene Corporation, manufacturers of asbestos products to which the same three Sheffield plaintiffs were allegedly exposed while aboard their respective vessels. This case also involves cross-claims of third-party defendant Foster Wheeler (“FW”) against Owens and Keene for indemnity or contribution as a result of the alleged exposure of two of the plaintiffs, Sheffield and Young, to boilers manufactured by FW, some of which allegedly incorporated the asbestos products of Owens and Keene.
On February 14,1991, Sheffield executed “Pro Tanto Release and Indemnity Agreements,” which, on the basis of a sum paid in settlement, purportedly released Owens, Keene, and their respective predecessors and successors from liability as a result of Sheffield’s alleged exposure to the asbestos products of Owens and Keene.[1] On February 14, 1991, Owens and Keene moved for summary judgment as to “each cross-complaint, third-party complaint, [and] amended third-party complaint” for contribution or indemnity, on the basis of the settlement agreements. The trial court heard oral arguments on those motions during a hearing at which FW was represented. On March 11, 1991, Owens and Keene moved for a summary judgment as to “the plaintiffs’ complaint,” on the ground that there was insufficient evidence of exposure of the plaintiffs to their asbestos products. On June 10, 1991, the trial judge granted the motions of Owens and Keene and dismissed all claims against *441 those defendants. The judgment was certified as final, pursuant to Ala.R.Civ.P. 54(b).

A. Owens

In Sheffield, this Court affirmed a summary judgment in favor of OCF against Sheffield, Young, and the shipowners on the ground that those parties had failed to produce evidence of exposure of Sheffield or Young to a product manufactured by OCF. However, we reversed the judgment of the trial court as to the claims of Shaw and the shipowners based on Shaw’s alleged exposure. Applying maritime law, we held that the parties had produced evidence of Shaw’s exposure to “Kaylo,” an asbestos insulation product manufactured by OCF, the successor to Owens’s right to manufacture Kaylo, sufficient to preclude summary judgment.
Sheffield controls the outcome of this case as it relates to the claims based on alleged exposure of the three plaintiffs to Owens’s products. Consequently, on the authority of Sheffield, the judgment in favor of Owens is reversed as to the claims based on the exposure of Shaw. As to the claims based on the alleged exposures of Sheffield and Young, the judgment is affirmed.

B. Keene

The evidence presented by the shipowners purporting to identify a Keene product to which Shaw may have been exposed, and that presented by the shipowners and FW in an effort to identify a Keene product to which Sheffield and Young may have been exposed is, for the reasons we detailed in Sheffield, insufficient to satisfy the threshold requirement of product identification. The evidence produced by the shipowners and FW is based on Qualified Product Lists and testimony that certain products were used or ordered for use in shipyards at which certain vessels were built. As we pointed out in Sheffield, such evidence cannot, by itself, create an inference that a specific manufacturer’s product was, more probably than not, on board a ship on which one of the plaintiffs served.
FW, for example, produced the deposition testimony of Albert Rost, who stated that “pipe covering and block” insulation material manufactured by Baldwin-Ehret-Hill (“BEH”), a company allegedly purchased by Keene, was in use at the shipyard at which the Ticonderoga, a tanker on which Sheffield served, was constructed. Although Rost testified that BEH supplied more pipe covering and block than any other company, he also testified that Owens and Keasby Mattison were supplying comparable materials at that time. Deposition of Albert Rost, at 23.
His testimony fails to show that it was more probable than not that BEH insulation material was installed on the Ticonderoga. Hypothetically, if the percentages of insulation supplied bj$BEH, Owens, and Keasby and Mattison amounted to 50%, 25%, and 25% respectively, the chances that BEH insulation was installed on the Ticonderoga would, at best, be 50-50. Under maritime law, evidence must create more than a “mere possibility” and more than an “evenly balanced” likelihood that a product was on board a vessel on which the plaintiff served. Sheffield, 595 So.2d at 451-52 (quoting Restatement (Second) of Torts § 433B, comment a (1965)).
FW contends that the judgment against its cross-claims, which arose out of the alleged exposure of Sheffield and Young to the products of Owens and Keene, must, nevertheless, be reversed because, FW insists, it was prejudiced by a lack of notice that its cross-claims were jeopardized by the second summary judgment motion filed on March 11, 1991. In other words, it contends that the March 11 motion, which expressly addressed only the plaintiffs’ claims, failed to apprise FW of the possibility of the consequent dismissal of its cross-claims. We disagree.
To be sure, the “entry of summary judgment by a trial court sua sponte, without giving to the party against whom such judgment is entered adequate and reasonable notice, as well as an opportunity to present evidence in opposition, is prejudicial error requiring reversal.” Hales v. *442 First Nat’l Bank of Mobile, 380 So.2d 797, 799 (Ala.1980). Under the facts of this case, however, FW’s contention that it was denied notice or an opportunity to present its own evidence is implausible. FW was not only apprised of, but actively opposed, the February 14 motions. Moreover, it knew or should have known, that the viability of its cross-claims against Owens and Keene for indemnity or contribution depended on a finding that Sheffield and Young were exposed to the products of those two manufacturers and that FW’s claims against Owens and Keene could be barred by the doctrine of collateral estop-pel in the event of an adverse finding on that issue. FW cannot now be heard to complain because the trial court, three months after the challenged motion was filed, determined &at the evidence presented by the plaintiffs and the shipowners of the plaintiffs’ exposure to the products of Owens and Keene was insufficient.
In addition, we have carefully considered the evidence presented by FW and, in view of the standards we set out in Sheffield, have concluded that the evidence is insufficient to preclude a summary judgment. Under these facts, we cannot say that FW was denied adequate notice or opportunity to present evidence in opposition to the motions on March 11.
Because we have concluded that the judgment is due to be reversed as it relates to the alleged exposure of Shaw to Kaylo, the effect of the Shaw-Owens settlement is placed in issue. The resolution of this issue is not without difficulty, as evidenced by the three approaches expressed in the Restatement (Second) of Torts § 886A, comment m:
“m. Release. There are three possible solutions for the situation in which one tortfeasor pays a sum to the injured party and takes a release or covenant not to sue that does not purport to be a full satisfaction of the claim. Each has its drawbacks and no one is satisfactory.
“(1) The money paid extinguishes any claim that the injured party has against the party released and the amount of his remaining claim against the other tort-feasor is reached by crediting the amount received; but the transaction does not affect a claim for contribution by another tortfeasor who has paid more than his equitable share of the obligation. This has been called the fairest solution, but it has proved to be very discouraging to settlements. A tortfeasor (and his insurance company) has no incentive to make an individual settlement if he is not at all sure that it will extinguish his liability and allow him to close his books on the subject. This works most decidedly to the detriment of the settling tortfeasor, and the insurance companies have been strongly opposed to it.
“(2) The money paid extinguishes both any claims on the part of the injured party and any claim for contribution by another tortfeasor who has paid more than his equitable share of the obligation and seeks contribution. This solution favors the settling tortfeasor and his insurance company and is supported by them. But it can be very unfair to the other tortfeasors and provides a clear incentive to collusion between the settling parties. To avert this it may be necessary to impose a requirement of ‘good faith.’ But once there is an attempt to provide objective criteria for determining whether a transaction is in good faith, the finality of the release comes into question, books cannot be closed and the major advantage of the solution is dissipated.
“(3) The money paid extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor. This solution works most strongly against the interest of the injured party and may have the effect of discouraging him from entering into a settlement. It may, for example, make it not desirable for him to accept the full amount of coverage in a minimum insurance policy if the equitable share of the obligation of *443 the tortfeasor is likely to be substantially larger.
“Important policy reasons therefore weigh against each of the three solutions. Case authorities and statutes are also divided and there is no semblance of a consensus. The experience in drafting the uniform laws depicts the difficulties of the problem. The 1939 uniform act adopted the first solution; the 1955 act supplanting it adopted the second solution; and the 1977 act supplanting it adopted the third solution.
“The Institute leaves these issues to a caveat and takes no position.”
(Emphasis added.)
The trial judge apparently declined to rule on the legal issue regarding the effect of settlement, preferring, instead, to base the judgment on the factual issue of sufficiency of evidence of product identification. The shipowners have not briefed this issue or cited authority. Owens and Keene have only summarily discussed the question. In view of the magnitude of the litigation pending in the lower courts, we deem it prudent to proceed with deliberation, establishing precedent only after the lower courts have had ample opportunity to address the issues. Therefore, we remand this cause to the trial court for further proceedings in light of Sheffield.
The judgment of the trial court in favor of Keene is affirmed. The judgment in favor of Owens is affirmed as it relates to the claims arising out of the alleged exposures of Sheffield and Young to Owens’s products. The judgment in favor of Owens is reversed as it relates to the claims arising out of the alleged exposure of Shaw.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, HOUSTON, STEAGALL and INGRAM, JJ., concur.

. Young and Shaw executed comparable agreements with Owens and Keene on March 29, 1991, and April 4, 1991, respectively.